# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2025

Lyle W. Cayce
Clerk

No. 24-30561

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

JOHN WAYNE MORGAN, JR.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:23-CR-174-1

_____

Before WIENER, WILLETT, and HO, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

This is yet another constitutional challenge to 18 U.S.C. § 922(g)(1), which bars convicted felons from possessing firearms. Defendant–Appellant John Wayne Morgan, Jr. was convicted under that statute based on a prior Louisiana felony for illegal use of a weapon. Bound by precedent on his facial claim and unpersuaded by his as-applied challenge, we AFFIRM.

I

Morgan's sole prior felony conviction was for illegal use of a weapon—specifically, a drive-by shooting that struck a victim's home and

No. 24-30561

car in October 2021. He was sentenced to two years' imprisonment and released on felony parole on March 7, 2023. Just one month later, police attempted to stop a vehicle in which Morgan was a passenger for a traffic violation. The driver repeatedly slowed and sped up before eventually pulling over. Inside the car, officers discovered four loaded firearms, including one reported stolen. Morgan was charged with one count of being a felon-in-possession under 18 U.S.C. § 922(g)(1) and one count of possessing unregistered firearms under 26 U.S.C. § 5861(d).

In October 2023, Morgan moved to dismiss both counts of the indictment, arguing that § 922(g)(1) and § 5861(d) were unconstitutional both on their face and as applied to him. The district court denied the motion in early 2024, holding that convicted felons were not among "the people" protected by the Second Amendment and, in any event, the challenged restrictions are consistent with the Nation's historical tradition of firearm regulation.

Morgan pleaded guilty to the felon-in-possession charge in exchange for dismissal of the firearm-registration count. The district court sentenced him to 50 months' imprisonment. The written plea agreement, however, preserved Morgan's right to appeal the denial of his motion to dismiss. He timely filed a notice of appeal.[1]

## II

On appeal, Morgan renews the arguments raised in his motion to dismiss the indictment, contending that § 922(g)(1) violates the Second Amendment both facially and as applied to him. As Morgan rightly concedes,

_____

[1] 28 U.S.C. § 1291.

No. 24-30561

his facial challenge is foreclosed by precedent.[2] We therefore consider only his as-applied challenge.

A

We review preserved constitutional challenges *de novo*.[3] But if a defendant fails to raise an issue in the district court, we review only for plain error.[4] Because the parties disagree about whether Morgan preserved his as-applied challenge, we begin by determining the proper standard of review.

"The distinction between as-applied and facial challenges is sometimes hazy."[5] An as-applied challenge asks whether a law—though constitutional in some circumstances—"is nonetheless unconstitutional as applied to [a defendant's] activity."[6] A facial challenge, by contrast, requires showing that "the law is unconstitutional in all of its applications."[7] Facial challenges "consider[] only the text of the measure itself, not its application to the specific circumstances under which a person acted."[8]

As a rule, "[i]f a party wishes to preserve an argument for appeal"—whether facial or as-applied—"the party 'must press and not merely intimate the argument during the proceedings before the district court.'"[9]

---

[2] *See United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024).

[3] *See United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009).

[4] *See United States v. Lozano*, 791 F.3d 535, 537 (5th Cir. 2015).

[5] *United States v. Perez*, 43 F.4th 437, 443 (5th Cir. 2022).

[6] *Spence v. Washington*, 418 U.S. 405, 414 (1974) (per curiam).

[7] *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).

[8] *Facial invalidity*, *in* 16 *C.J.S. Constitutional Law* § 153 (2024).

[9] *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) (citation omitted); *see also United States v. Fernandez*, 48 F.4th 405, 412 (5th Cir. 2022)

3

No. 24-30561

Morgan explicitly stated in his district court filings that § 922(g)(1) was unconstitutional "as applied." And the district court's order likewise referenced his "as-applied" challenge. The Government, however, contends that "Morgan's district court briefing contained *no* substantive as-applied analysis at all" and instead "mounted purely facial arguments." Indeed, regardless of how Morgan labeled his challenge, his motion focused solely on broad historical traditions regarding restrictions on felons' firearm possession in general—not on the application of those restrictions to someone with his specific background. The Government responded in kind, addressing only the statute's general constitutionality rather than its application to Morgan's individual circumstances.

Though a close call, "[t]he record supports the conclusion that [Morgan] preserved an as-applied challenge in his motion to dismiss."[10] While Morgan's argument "focused on the plain text of the Second Amendment and § 922(g)(1)'s alleged inconsistency with the historical regulation of firearms," his motion "expressly conclude[d] that '§ 922(g)(1) is unconstitutional *as applied to*" Morgan, and the district court recognized that argument.[11]

---

("[A]rguments not raised before the district court are waived and will not be considered on appeal." (citation omitted)).

[10] *United States v. Zinnerman*, No. 24-30310, 2025 WL 984605, at *2 (5th Cir. Apr. 2, 2025).

[11] *Id.* (emphasis added); *see also Int'l Women's Day Mar. Plan. Comm. v. City of San Antonio*, 619 F.3d 346, 356 (5th Cir. 2010) (finding only a facial challenge preserved where the record was "bare of any explicit reference to an as-applied challenge"); *United States v. Collette*, No. 22-51062, 2024 WL 4457462, at *2 (5th Cir. Oct. 10, 2024) (per curiam) (finding forfeiture where an as-applied challenge was mentioned only "in passing while discussing the procedural history" of the case), *cert. denied sub nom. Collette v. United States*, No. 24-6497, 2025 WL 1787754 (U.S. June 30, 2025).

No. 24-30561

Accordingly, "[b]ecause [Morgan] preserved his as-applied challenge to § 922(g)(1) by raising it in his motion to dismiss the indictment . . . , we review the constitutionality of § 922(g)(1) de novo."[12]

B

We next turn to the merits of Morgan's Second Amendment challenge, beginning—as always—with the constitutional text. The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

Following the framework laid out by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,[13] our first task is to ask whether the challenged law—§ 922(g)(1)—"impinges upon a right protected by the Second Amendment."[14] If it does, the burden shifts to the Government to "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."[15]

1

We begin with Step One: whether § 922(g)(1) burdens conduct protected by the Second Amendment. This is not our first post-*Bruen* analysis of § 922(g)(1). In *Diaz*, we recognized that convicted felons are among "the people" protected by the Second Amendment, and we held that the "plain text of the Second Amendment covers the conduct prohibited by

_____

[12] *United States v. Schnur*, 132 F.4th 863, 866–67 (5th Cir. 2025).

[13] 597 U.S. 1 (2022).

[14] *Diaz*, 116 F.4th at 463–64 (citations omitted).

[15] *Bruen*, 597 U.S. at 17.

No. 24-30561

§ 922(g)(1)."[16] That reasoning applies with full force here. As applied to Morgan, § 922(g)(1) "impinges upon a right protected by the Second Amendment."

2

At Step Two, the burden shifts to the Government to show that our Nation has a longstanding historical tradition of disarming individuals with a criminal history analogous to Morgan's.[17]

To begin, we consider only those predicate offenses under § 922(g)(1) that are "punishable by imprisonment for a term exceeding one year."[18] Other convictions, arrests, or conduct are "not relevant for our purposes."[19] And in searching for a founding-era analogue to that felony, the inquiry does not require a "historical twin," but rather a regulation that is "relevantly similar."[20] Determining whether a regulation is "relevantly similar" turns on two considerations: (1) "whether modern and historical regulations impose a comparable burden on the right of armed self-defense," and (2) "whether that burden is comparably justified."[21]

i

We begin by assessing whether Morgan's prior conviction for illegal use of weapons under Louisiana law qualifies as a predicate felony under § 922(g)(1). It does.

---

[16] 116 F.4th at 466–67.

[17] *See id.* at 467; *United States v. Kimble*, 142 F.4th 308, 311 (5th Cir. 2025).

[18] *Kimble*, 142 F.4th at 310.

[19] *Diaz*, 116 F.4th at 467.

[20] *Id.* (quoting *Bruen*, 597 U.S. at 29–30) (emphasis removed).

[21] *Id.* (citation omitted).

The Louisiana illegal-use statute provides that "[i]llegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being."[22] The statute currently prescribes imprisonment for up to two years.[23] Accordingly, Morgan's illegal-use conviction qualifies as a relevant predicate felony.

Though Morgan argues that illegal use of a weapon is "barely a felony," the question of whether a conviction qualifies as a predicate offense is not one of degree. Rather, it is a bright-line rule: whether the offense is "punishable by imprisonment for a term exceeding one year."[24]

Moreover, the circumstances of Morgan's conviction illuminate why his offense qualifies under that standard. The Government emphasizes the conduct forming the basis of his conviction—calling it a "vicious drive-by shooting." Morgan counters that such reliance on facts beyond his single qualifying conviction violates *Diaz*, maintaining that "other prior convictions, arrests, or conduct are not relevant."

Regardless of the Government's mention of misdemeanors and other alleged conduct that did not result in qualifying convictions, its account of Morgan's conduct underlying the predicate offense is both permissible and revealing.[25] Here, Morgan was arrested, charged, and ultimately pleaded

---

[22] La. Rev. Stat. § 14:94(A).

[23] La. Rev. Stat. § 14:94(B).

[24] *Diaz*, 116 F.4th at 467.

[25] *See, e.g.*, *United States v. Contreras*, 125 F.4th 725, 730, 732–33 (5th Cir. 2025) (holding that the defendant's predicate felony survived an as-applied challenge after assessing the conduct underlying the conviction); *United States v. Betancourt*, 139 F.4th

guilty after officers responded to a residence where "a drive-by shooting of a home and vehicle occurred." Indeed, officers recovered sixteen .223/5.56mm expended cartridge casings from the scene. This is not conduct that barely clears the felony threshold. And regardless of scale, the statutory punishment leaves no doubt that illegal use of a weapon qualifies as a predicate felony.

ii

We next compare the Government's proposed historical analogue to § 922(g)(1) as applied to Morgan's felony conviction, asking whether it is "relevantly similar." That inquiry requires evaluating whether the historical analogue and § 922(g)(1), as applied here, impose a comparable burden on the right to armed self-defense—and whether that burden is comparably justified.[26] Contrary to Morgan's argument, the Government clears that bar.

The Government points to the founding era's "going armed" laws—a category of laws we have already deemed relevant to § 922(g)(1).[27] These laws prohibited individuals from "riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land."[28] In short, they targeted "those who had menaced others with firearms" and "disrupted the public order" through conduct likely to lead to "actual violence."[29] As the Supreme Court has observed, early American laws "prohibit[ed] bearing

---

480, 484 (5th Cir. 2025) (considering the defendant's disregard of a flashing red light, speeding, and causing a major crash with serious injuries to two people in assessing the predicate felony).

[26] *See Diaz*, 116 F.4th at 467.

[27] *See Diaz*, 116 F.4th at 470–71 (collecting statutes and concluding "[g]oing armed laws are relevant historical analogues to § 922(g)(1)").

[28] *Id.* at 464 (citations and quotation marks omitted).

[29] *Id.* at 464, 470–71 (citations omitted).

arms in a way that spreads 'fear' or 'terror' among the people."[30] Such laws, the Court emphasized, "require something more than merely carrying a firearm in public."[31]

The "going armed" laws are relevantly similar to § 922(g)(1) as applied to Morgan. Like § 922(g)(1), they imposed "permanent arms forfeiture as a penalty"—a consequence that places a "comparable burden on the right of armed self-defense"—once an individual was convicted of a disqualifying offense, whether for "going armed" or for unlawful firearm use.[32] That shared penalty reinforces the historical analogy and supports the constitutionality of § 922(g)(1) in this context.

And that burden is comparably justified. "The historical record demonstrates 'that legislatures have the power to prohibit dangerous people from possessing guns.'"[33]

Both the "going armed" laws and § 922(g)(1) target "individuals found to threaten the physical safety of another."[34] Each statute "restricts gun use to mitigate demonstrated threats of physical violence," yet "does *not* broadly restrict arms use by the public generally."[35] Thus, "[t]he justification behind going armed laws, to 'mitigate demonstrated threats of physical

---

[30] *Bruen*, 597 U.S. at 50.

[31] *Id.*

[32] *Diaz*, 116 F.4th at 467, 471.

[33] *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (quoting *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (BARRETT, J., dissenting)); *see also Folajtar v. Att'y Gen.*, 980 F.3d 897, 912 (3d Cir. 2020) (BIBAS, J., dissenting) ("The historical touchstone is danger[.]"); *Kimble*, 142 F.4th at 312 (holding § 922(g)(1) constitutional as applied to an "intrinsically dangerous felony").

[34] *United States v. Rahimi*, 602 U.S. 680, 698 (2024).

[35] *Id.* (emphasis added).

violence,' supports a tradition of disarming individuals like [Morgan] pursuant to § 922(g)(1), whose underlying convictions stemmed from the . . . commission of violence with a firearm."[36]

Morgan contends that the Louisiana illegal-use statute is too broad to support a historical analogue because it criminalizes both intentional and criminally negligent conduct. In his view, the Government has not identified any founding-era law that punished the negligent discharge of a firearm—let alone "one that would have been seriously punished." He further points out that illegal use of a weapon was not even criminalized in Louisiana until 1942 and remained a misdemeanor offense until 1968.

"[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."[37] That is the case here. Accordingly, we need not resolve whether a historical analogue exists specifically for criminal negligence, because the "going armed" laws are "relevantly similar" to § 922(g)(1) as applied to Morgan. Like those early laws, Louisiana's illegal-use statute penalized Morgan for "menac[ing] others with [a] firearm[]" and "disrupt[ing] the public order" through conduct likely to lead to "actual violence."[38] This was no case of merely "carrying a firearm in public."[39] Officers recovered sixteen spent casings from the scene of a drive-by shooting.[40] That volume of firepower speaks for itself.

---

[36] *Bullock*, 123 F.4th at 185 (quoting *Rahimi*, 602 U.S. at 698).

[37] *Bruen*, 597 U.S. at 30.

[38] *Diaz*, 116 F.4th at 464, 470–71 (quotations omitted).

[39] *See Bruen*, 597 U.S. at 50.

[40] Although Morgan suggests that his firearm possession "while he was on parole does not impact his as-applied Second Amendment challenge to § 922(g)(1)," we have

No. 24-30561

Although § 922(g)(1) as applied to Morgan "is by no means identical to these founding era regimes, . . . it does not need to be. Its prohibition on the possession of firearms by those found by a court to present a threat to others fits neatly within the tradition the . . . going armed laws represent."[41] In other words, the "going armed" laws "have the same 'how' and why' as § 922(g)(1)'s application as to [Morgan]."[42] Section 922(g)(1) applies "faithfully the balance struck by the founding generation to modern circumstances."[43]

## C

Finally, we address Morgan's request for a remand so that the district court may apply *Rahimi* and *Diaz*, both decided after the denial of his motion to dismiss. We decline to do so, for at least three reasons.

First, although the district court erred in concluding that felons fall outside the scope of the Second Amendment's protections, it nevertheless proceeded to *Bruen*'s Step Two—well-established at the time—and found that § 922(g)(1) comported with this Nation's historical tradition of firearm regulation.

Second, while the Government did not identify a founding-era analogue specific to "negligent use of a weapon" below, it *did* offer analogues to other felonies and preserved its overarching argument that "[s]ection 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation." That suffices. As we have explained, "[b]ecause the Second

---

previously held that restricting firearm possession while on parole fits within our Nation's historical tradition. *See, e.g.*, *United States v. Giglio*, 126 F.4th 1039, 1044 (5th Cir. 2025).

[41] *Rahimi*, 602 U.S. at 698 (citation omitted).

[42] *Contreras*, 125 F.4th at 733.

[43] *Bruen*, 597 U.S. at 29 n.7.

11

No. 24-30561

Amendment analysis is a legal inquiry into the text and history related to the relevant regulation, the government may provide additional legal support for its arguments on appeal."[44]

Third—and perhaps most importantly—we have repeatedly decided the merits of Second Amendment challenges even where *Rahmi* or *Diaz* issued after the district court's ruling but before our own.[45] As in those cases, no remand is necessary here.

## III

We hold that § 922(g)(1), as applied to Morgan, is "consistent with" the Second Amendment[46] and "'relevantly similar' to laws that our tradition is understood to permit."[47]

Accordingly, we AFFIRM.

---

[44] *Bullock*, 123 F.4th at 185.

[45] *See, e.g.*, *Diaz*, 116 F.4th 458; *Betancourt*, 139 F.4th at 484; *United States v. Lopez*, No. 24-50182, 2025 WL 1604510, at *2 (5th Cir. June 6, 2025) (per curiam); *United States v. Moore*, No. 24-30053, 2025 WL 711119, at *3 (5th Cir. Mar. 5, 2025) (per curiam); *Collette*, 2024 WL 4457462, at *1.

[46] *Bruen*, 597 U.S. at 24

[47] *Rahimi*, 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29).